RECEIVED

NOV 2 9 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# United States District Court
## IN THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Eli Mast, *et ux* | No: | )1:06-1313 |
| | (RJL) | |
| Plaintiff, | | |
| v. | RESPONSE TO MOTION TO DISMISS | |
| United States | | |
| Defendant. | MOTION TO BIFURCATE | |

Plaintiff hereby responds:

Defendant has moved to dismiss the above-captioned action for insufficiency of service, and for lack of subject matter jurisdiction.

### QUESTION PRESENTED

Did Congress' (and the Supreme Court's) approval of the language of Rule 4(i), specifying the Rule's alternative method of service upon the United States by mail create an exception to Rule 4(c)(2)'s requirement of personal service by one "not party"?

Notwithstanding the language of Fed.R.Civ.P. 4(c)(2), Fed.R.Civ.P. 4(i), the Rule under which service was effected, states:

> (1)     Service upon the United States shall be effected (A) by delivering a copy of the summons and of the complaint to the United States attorney for the district in which the action is brought or to an assistant United States attorney or clerical employee designated by the United States attorney in a writing filed with the clerk of the court *or by sending a copy of the summons and of the complaint by registered or certified mail* addressed to the civil process clerk at the office of the United States attorney and (B) by also sending a copy of the summons and of the complaint by registered or certified mail to the Attorney General…(emphasis added)

We respectfully assert that Congress' (and the Supreme Court's) approval of the

language of Rule 4(i), specifying the Rule's alternative method, signified by, "or" and continuing "by sending a copy of the summons and of the complaint by registered or certified mail..." should be given weight, and that weight so given precludes dismissal of an action in which service of process was unarguably made.

This assertion finds support in many of the very cases that Counsel cites as authority.

**Case In Point:** *Relf v Gasch*, 511 F.2d 804 (DC Cir 1975)

The first case cited is apparently a case so far removed from the issues in the case at bar that the misrepresentation thereof rises to a whole new order of magnitude. *Relf v Gasch*, 511 F.2d 804 (DC Cir 1975)[1] was a case in which Relf, as next friend for minor relatives (also Relfs), sought mandamus against Gasch, a District Court Judge, for transferring a Federal Tort Claims Act action regarding the unauthorized, non-consensual tubal sterilization of the minor Relfs.

While Plaintiffs believe that the depths of this outrageous misrepresentation can only be fully understood by a complete reading of *Relf*, the essential point is that the D.C. Circuit found that Judge Gasch lacked jurisdiction to transfer the case from the District of Columbia to the Middle District of Alabama. *Relf*, note 12.[2]

*Relf* has absolutely nothing to do with service of process in any form, by any person, in any capacity.

**Case In Point:** *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456

---

[1]One of only 2 cases cited that was litigated in the D.C. Circuit.

[2]Although Plaintiffs have been yet unable to access *Hodge v. Rostker*, 501 F.Supp. 332, 332 (D.D.C. 1980), cited in conjunction with *Relf*, and *Rabiolo v. Weinstein*, 357 F. 2d 167, 168 (7th Cir. 1966), Plaintiffs note that the multiple irrelevant citations Plaintiffs have discovered throw any included citation into question.

U.S. 694.

*Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S.

694,[3] did not even address service of process, and counsel's citation thereof as support

for her "improper service" argument is another clear misrepresentation. *Insurance*

*Corp. of Ireland v. Compagnie des Bauxites de Guinee* involved a district court's

decision over matters governed by Fed.R.Civ.P. 37, as shown in the syllabus:

"Federal Rule of Civil Procedure 37(b)(2)(A) provides that a district court, as a

sanction for failure to comply with discovery orders, may enter

[a]n order that the matters regarding which the [discovery] order was
made or any other designated facts shall be taken to be established for
the purposes of the action in accordance with the claim of the party
obtaining the order."

Rule 37 has nothing to do with service of process by any person, in any capacity,

under any rule.

## Case In Point:

*Light v Wolf*, 816 F 2d 746 (D.C. Cir. 1987)[4] speaks for itself:

This case concerns the proper method of service of process on a federal
official who is being sued, ostensibly in her individual capacity, for
activities that might actually fall within the scope of her official duties.
More specifically, the question is whether in that situation service upon the
individual alone is sufficient, or whether, as the District Court held, service
on the United States is also required.

Clearly, *Light v Wolf* was about nothing more than whether a federal employee

(Pat Genis, for example) could sue her boss (USA Taylor, for example), for interfering

with a private contract (with a local law firm, for example). The case was dismissed

---

[3]The lone Supreme Court case upon which defendant relies on the issue of service.

[4] The first of only 2 cases cited that was litigated in the D.C. Circuit.

solely because service of process was quashed:

> Employee of government agency brought action against agency supervisor for slander and tortious interference with contract involving contract employee had negotiated with private foundation. The United States District Court for the District of Columbia, John Garrett Penn, J., ordered that service of process be quashed and action be dismissed. Employee appealed. The Court of Appeals, Harold H. Greene, District Judge, sitting by designation, held that, although allegations of employee's complaint on their face supported employee's claim that action was purely private dispute, action might in substance be regarded as one against supervisor in her official capacity, and thus employee's failure to serve copy of summons and complaint on both supervisor and United States required dismissal of action.

*Light v Wolf* had nothing to do with how Wolf was served, nor even how the United States was (not) served (at all) in what was intended to be a private cause of action.

Only one of the cases above involved service of process; none had anything at all to do with subject matter even remotely comparable in this case[5], yet there are cases which involved the same agency, which counsel apparently chose not to cite:

**Case In Point:**

*Davis v. Garcia*, 226 F.R.D. 386 (C.D. Cal. 2004), was dismissed on a service of process issue; but primarily for Davis' failure to effect timely service.

Although not directly discussed in the Federal Rules Decisions, it is clear that Davis was "a state prisoner proceeding *Pro se*" *Davis*, at 387, and it appears that Davis attempted personal service upon certain prison guards, which the Court noted was not allowed (citing *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986) (fellow inmates, but

---

[5]As noted, Plaintiffs have been unable, due to time, to research all of the cases cited, but assert that those included herein should be accepted as setting the standard for all of counsel's included citations.

not the plaintiff inmate himself, allowed to serve inmate's complaint against prison
guards)).

If, as indicated, Davis attempted to make personal service himself, Rule 4(c)(2)
most certainly applied, although Rule 4(i) was never implicated. Further, *Davis* was
dismissed in large part because "plaintiffs Proof of Service indicates that service was
made under Rule 5(b) of the Federal Rules of Civil Procedure," and "plaintiff simply
served a copy of the Summons and Complaint, without including a waiver of service or
notice and acknowledgment form as required by state and federal law. Cal.Code of Civ.
Proc. § 415.30; Fed.R.Civ.P. 4(e)(i)."

Counsel should know that Waiver of Service is unavailable in suits against the
United States, and the agency, IRS, is not party to this action..

## Case In Point:

*Taylor v. United States*, 192 F.R.D. 223, a case that involved IRS, was dismissed
solely for Taylor's failure to effect timely service.

"Action was subject to dismissal without prejudice for failure to effect proper
service of process within 120 days of filing complaint or to obtain from defendant
a waiver of service, where return-of-service affidavit indicated that plaintiff acted
as the server of process, plaintiffs did not move for an enlargement of time in
order to perfect service, and plaintiffs made no attempt in their response to
defendant's motion to dismiss to show good cause for their failure to perfect
service. Fed.Rules Civ.Proc.Rule 4(c)(2), (d, m), 28 U.S.C.A."
*Taylor*, 192 F.R.D. 223 (headnote 1; West Key 1751)

Although the Taylor Court mentioned "...return-of-service affidavit indicated that

plaintiff acted as the server of process..." the case was dismissed solely upon Taylor's

failure to effect timely service:

"Inasmuch as more than 120 days have passed since the filing of Plaintiffs'
cornplaint; (footnote omitted) plaintiffs have not moved for an enlargement of

time in order to perfect service; and Plaintiffs made no attempt in their response to CISD's motion to show good cause for their failure to perfect service, the action against CISD is properly dismissed without prejudice. seeFed.R.Civ.P.4(m); Fed.R.Civ.P.12(b)(5)."

*Taylor*, 192 F.R.D. 223, 224.

Dismissal on grounds of insufficiency of service should be denied.

## SUPPLEMENTAL QUESTION PRESENTED

Is counsel's misreading, misunderstanding, mischaracterization and

misrepresentation of the cited cases (as involving validity of service upon the United

States by Certified Mail under the approved language of Fed.R.Civ.P 4(i)) intended to

mislead the Court in respect of service by mail?

DECLARATORY JUDGMENTS ACT MISAPPLIED

## QUESTION PRESENTED

Did Congress' enactment of the various Taxpayers Bill(s) of Rights (IRC section

7433) create an exception to the Declaratory Judgments Act's internal exception to

federal tax issues?

## QUESTION PRESENTED

Does counsel's application of the DJA effectively override Congress' enactment

of IRC section 7433?

The Declaratory Judgments Act was enacted June 25, 1948, ch. 646, 62 Stat.

964; but was based upon title 28, U.S.C., 1940 ed., § 400, and apparently has roots

going back as far as 1911.  DJA's current incarnation has been amended 10 times.

Internal Revenue Code section 7433 was placed into the Internal Revenue Code

as the "exclusive remedy" for disregard of law and regulation by the Taxpayer Bill of

Rights (TBOR I) in 1988, and has been amended only twice, most recently in 1998

(TBOR III).

Assuming, without admitting, that Plaintiffs were seeking the Court's "declaration" of rights in seeking findings (determinations) of agency disregard of law and regulation as specifically authorized by Congress in its enactment of section 7433's exclusive remedy (nowhere is a request for a "declaration" of rights made in the Complaint), it appears that Congress carved out, in the Taxpayers' Bill(s) of Rights, an exception to the DJA's internal exception with respect to federal tax matters. Elsewise, Congress' enactment of the "exclusive remedy" and its amendments were nullities upon their successive enactments, being "pre-repealed" by the DJA.

## MIS-"CONSTRUCTION" AS A REFUND SUIT

In the introduction (untitled first paragraph), counsel mischaracterizes the instant case as seeking "damages for alleged "wrongful collection". Counsel's use of quotation marks indicates that counsel is fully aware that her misrepresentative term of art, e.g., "wrongful collection", is nowhere found in the Amended Complaint. Counsel also places in quotes "'replevin'", apparently to further mischaracterize Plaintiff's action.

This deliberate misreading, misunderstanding, mischaracterization and misrepresentation of the Complaint allows counsel to misapply IRC section 7422 (governing refund actions) to a section 7433 damages claim, in much the same way that counsel seeks to effect a "stealth repeal" of IRC 7433 through misapplication of the Declaratory Judgments Act.

Plaintiffs seek a determination as to whether officers or employees of defendant's agent disregarded provisions of the Internal Revenue Code or regulations

promulgated thereunder "in connection with" collection activity in the absence of a valid, properly executed Certificate of Assessment, i.e., making an "exaction…in the guise of a tax." See: *Enochs V. Williams Packing Co.*, 370 U.S. 1 (1962). If, upon evidence, the Court finds[6] that such unauthorized actions were committed, damages — authorized by Congress[7] — may then be determined; damages under IRC section 7433 (for "exaction…in the guise of a tax") are in no sense the "refund" to which counsel alludes. Counsel's retreat to this issue demonstrates defendant's inability to address the issue of valid, existing assessment(s).

Counsel's attempt at conversion also ignores "the controlling significance of context" recognized by Ginsburg, J., in WACHOVIA BANK, N. A. V. SCHMIDT , ___ U.S.___, (04-1186, decided January 17, 2006), citing Citizens & Southern Nat. Bank v. Bougas, 434 U.S. 35. IRC section 7433 has, in all incarnations, authorized civil actions for damages resulting from disregard of any provision and any regulation "in connection with" any collection of tax, not simply "wrongful collection" as counsel mis-states; and section 7433 contains no limitation to "disregard of 'collection provisions' or 'collection regulations' ", and counsel lacks authority to effect such change in the law.

Counsel then refers to Plaintiff's desire for an injunction, apparently overlooking the fact that such relief was to be predicated upon factual findings in the case, including but not limited to, a finding that lack of evidence of a procedurally proper, valid assessment,

---

[6] Rather than "declares" that Plaintiffs have a right to such finding.

[7] Unless TBOR I, II, and III were "pre-repealed" by the Declaratory Judgments Act.

renders a purported "collection" action an "exaction in the guise of a tax".    In such an instance, both prongs of *Enochs V. Williams Packing Co.*, 370 U.S. 1 (1962) (government inability to prevail and equitable jurisdiction) would be met, to wit:


## FRIVOLOUS "FAILURE TO EXHAUST" MOTION

It is now established that the Court's power to hear the case at bar is no longer in question. In recent Memorandum Opinions, *Lindsey v. United States*, DDC 05-1761 (RBW), *Martin v. United States*, DDC 05-2506 (RMC), September 22, 2006, *Anderton v United States*, DDC 06-129 (RBW), the Court discussed this issue at length, and, relying upon *Arbaugh v. Y & H Corp.*, 126 S. Ct. 1235, 1245 (Feb. 22, 2006) and *Turner v. United States*, 429 F. Supp. 2d 149, 154 (D.D.C. 2006) (JDB), the Court (Walton, Collyer, and others) made clear that "failure to exhaust administrative remedies *is not a jurisdictional prerequisite to bringing suit*". (emphasis added)

Counsel's frivolous motion relies mainly upon the assertion of failure to exhaust administrative remedies in accordance with 26 C.F.R. § 301.7433-1. In *Lindsey v. United States*, DDC 05-1761 (RBW), (cited by *Martin v. United States*, DDC 05-2506 (RMC), September 22, 2006, and *Anderton v United States*, DDC 06-129 (RBW)), the Court provided an opportunity to include a "facial challenge" to 26 C.F.R. § 301.7433-1, and Plaintiff herein so includes a "facial challenge" to 26 C.F.R. § 301.7433-1 herein:[8]

## FACIAL CHALLENGE

Plaintiff asserts that 26 C.F.R. § 301.7433-1 is an unreasonable interpretation of

---

[8]And in the AMENDED Complaint, lodged concurrently.

the current statutory provision; exceeds the authority of the current statutory provision by impermissibly extending the operation of the exhaustion requirement; and, by frustrating Congress' intent in creating, and amending, 7433; and by effectively converting a "7433 damages" claim into a "7422 refund" claim, effecting an unauthorized "stealth repeal" by regulation.

In the motion, counsel correctly reads § 7433(d)(1) in quoting "a judgment for damages shall not be awarded...unless the court determines that the plaintiff has exhausted the administrative remedies available to such plaintiff within the Internal Revenue Service." However, counsel acknowledges that the statute is ambiguous by attempting to rely upon the legislative history of TBOR III. MEMO IS SUPPORT OF MOTION TO DISMISS, p. 10.

The history, i.e., the evolution of Congress' language, shows that Congress, in proscribing a damages award - in the absence of the Court's own satisfaction with respect to administrative exhaustion - and without reinstating TBOR I's express proscription - left the issue to the court's discretion.

HISTORY OF 7433  Taxpayer Bill of Rights (TBOR I)

Congress inserted 7433 into the Internal Revenue Code in the Taxpayer Bill of Rights. Although Plaintiff(s) have been unable to find the actual Act of Congress, a comprehensive discussion was published by the American Bar Association:

"Section 7433 also removes tax collection controversies between taxpayers and the IRS from the jurisdiction of federal courts and places them in the IRS administrative bureaucracy. Section 7433(d) requires taxpayers to exhaust their administrative remedies before filing section 7433 actions in district court. In 1996, the Taxpayer Bill of Rights 2 (TBOR 2) eliminated the exhaustion requirement, permitting district courts to hear section 7433 claims provided that damage awards are reduced when the claimant does not exhaust administrative

remedies."

The Bar is correct regarding the 1996 amendment.

HISTORY OF 7433  Taxpayer Bill of Rights II (TBOR II)

PUBLIC LAW 104-168 (JULY 30, 1996) 110 STAT. 1453, entitled "An Act To amend the Internal Revenue Code of 1986 to provide for increased taxpayer protections,"  TBOR II's Title VIII, SEC. 802 amended Paragraph (1) of section 7433(d) to read:

> "The amount of damages awarded under subsection (b) may be reduced if the court determines that the plaintiff has not exhausted the administrative remedies available to such plaintiff within the Internal Revenue Service."

The Bar then opined that

> "However, Congress reinstated the exhaustion requirement in the 1998 Act."

The Bar is not precisely correct in this assertion.  TBOR III, found in the IRS Restructuring and Reform Act of 1998, Pub. L 105-206 (RRA '98), struck a delicate balance between TBOR I's "absolutely not" provision and TBOR II's "judgment may be reduced" amendment.  Section 7433, as re-amended by TBOR III, is <u>silent</u> with respect to bringing or maintaining a 7433 action.  The revision states no more than "…no judgment shall be awarded…" unless the Court is satisfied that administrative remedies available have been exhausted." (Paraphrased)   7433, in its current incarnation, neither prohibits, nor precludes, suit, as decided in *Lindsey v. United States*, DDC 05-1761 (RBW), *Martin v. United States*, DDC 05-2506 (RMC), September 22, 2006, *Anderton v United States*, DDC 06-129 (RBW), and others.  To paraphrase the Bar, 7433 now permits "district courts to hear section 7433 claims provided that…" in the absence of the Court's satisfaction as to administrative exhaustion, "…no judgment

shall be awarded...".

I respectfully direct the Court's attention to what the Bar had to say about the

re-amendment:

> "Congress should not have re-imposed the exhaustion provision. Many plaintiffs
> bring their actions to federal court under section 7433 because they do not trust
> the IRS to seriously consider their claims. Furthermore, most pro se plaintiffs do
> not understand the meaning of exhaustion of administrative remedies. These
> plaintiffs should not be penalized by their good-faith ignorance; instead, federal
> courts should hear their claims if valid. In addition, few pro se plaintiffs have
> actual notice of the process established by Treasury Regulation section
> 301.7433-1. Congress should understand many people's distrust of the ability of
> the IRS to proceed with their claims..."

The Court should take judicial notice of the Bar's recognition that "few pro se

plaintiffs have actual notice of the process".

## THE REGULATION IS AN UNREASONABLE INTERPRETATION

The current regulation requires that an injured Citizen wait up to six months for a

ruling on an administrative claim before bringing a civil suit, failing, even under the

deferential framework of Chevron U.S. A. Inc. v. Natural Resources Defense Council,

Inc., 467 U.S. 837, the standard of reasonable interpretation of a statute, and is

intended to frustrate a 7433 Plaintiff, to wit:

The half-year waiting period is extreme. In almost every other instance, IRS is

limited to (and may limit to) 30 days. Examples include Collection Due Process Hearing

requests (30 days, imposed by Congress); pre-Notice of Deficiency letters (30 days).

Even opportunity to petition for redetermination has a window of 90 days. Yet IRS

chose to give itself 183 days to decide upon an administrative damages claim. Few

people, if any at all, could withstand the six month period for reasons known to, and

published by, the National Taxpayer Advocate.[9]

## THE REGULATION EXCEEDS THE AUTHORITY OF THE STATUTE

In construing 7433's current incarnation, the starting point must be the language employed by Congress. See: *Reiter v Sonotone Corp.*, 442 US 330, 337, 60 L Ed 2d 931, 99 S Ct. 2326 (1979) and the courts must assume that the legislative purpose is expressed by the ordinary meaning of the words used. *Richards v United States*, 369 US 1, 9, 7 L Ed 2d 492, 82 S Ct. 585 (1962). 7433's current language must ordinarily be regarded as conclusive, *Consumer Product Safety Comm'n v GTE Sylvania, Inc.*, 447 US 102, 108, 64 L Ed 2d 766, 100 S Ct. 2051 (1980), and unless Congress has clearly indicated that its intentions are contrary to the words it employed in the statute, this is the ending point of interpretation. *Fuller v. United States*, 615 F. Supp. 1054 (D.C. Cal 1985; quoting Richards v. United States, supra.

7433's current language merely restricts an award of damages unless the Court is satisfied that administrative remedies (shown by Service Policy P-5-36, above, to be essentially unavailable absent judicial intervention) have been exhausted. If the Court is satisfied...that available administrative remedies have been exhausted...the Court can then award damages.

## AVAILABLITY OF REMEDY

Based upon the language of the regulation itself, and upon repeated agency actions of the Internal Revenue Service demonstrating disregard of governing statutes, regulations, and Service policies, Plaintiff contends that the administrative "remedies"

---

[9]SEE: excerpts from NATIONAL TAXPAYER ADVOCATE 2005 ANNUAL REPORT TO CONGRESS, below.

purportedly provided for - as implemented by regulation - are at best unavailable, and at worst, wholly inadequate.

As shown in Title 26 of the Code of Federal Regulations, IRS failed to prescribe the administrative procedure necessary to give effect to section 7433, as originally added, for over three years after Congress enacted TBOR I. Treasury Decision 8392, 57 FR 3536, necessary from and after November 10, 1988, was not promulgated until January 30, 1992, and might not have been effective until February 18, 1992.

In respect of Congress' removal of the jurisdictional prohibition in TBOR II, it appears that IRS failed to amend the regulation to reflect Congress' intent at all.

It is clear, however, that the current regulation, as amended by T.D. 9050, 68 FR 14320, was not promulgated until March 25, 2003, more than four years and nine months after Congress' re-amendment in TBOR III. This period of "unavailability" of administrative remedy provides the context in which the March 25, 2003 version of the regulation should be construed: IRS intends not to be sued.

To show that the above history accurately reflects IRS intent, the Court's attention is respectfully directed to IRS policy regarding return of amounts unlawfully collected.

Internal Revenue Service Policy P-5-36, published in the Internal Revenue Manual, at 1.2.1.5.9, is to refrain from returning amounts unlawfully collected. P-5-36 states:

"(1)    Returning money wrongfully collected: This Policy Statement has been revoked."

Thus, even if IRS has collected unlawfully, and knows it, whatever Policy might

have existed was revoked. The administrative remedy of filing a claim to recover unlawfully collected amounts is clearly unavailable when the Service Policy on such matters has been revoked.

REGULATION CONVERTS DAMAGES ACTION INTO REFUND ACTION

By requiring that Plaintiff(s) (claimants) place a specific value upon injuries claimed, the regulation effectively neuters the statutory provision in instances where, as alleged in Plaintiff(s) complaint, the threshold issue of whether an assessment has been properly made is raised. If IRS refuses to investigate that threshold issue, IRS denies a meaningful Collection Due Process Hearing; a "collection" might not yet have occurred, yet Plaintiff's right to challenge the existence of the underlying liability - established in the statutory provision (6330(c)(2)(B)) - is thwarted.   Defendant, in moving to dismiss the Complaint, primarily on this issue, conveniently overlooks the absence of a "refund" request.

THE REGULATION FRUSTRATES CONGRESS' INTENT

TBOR I, TBOR II, and RRA '98 are testaments of Congress' awareness that IRS cannot be trusted to administer the tax code without supervision. Indeed, in the words of former Deputy Assistant Secretary of Treasury Bradford DeLong, now a Professor at Berkeley,

> "The IRS's comparative advantage is using random terror to elicit voluntary compliance with the tax code...".

Congress intended that Citizens harmed by IRS' legendary disregard of governing statutes and regulations have an avenue to be made whole under section 7433, albeit with a prior administrative review. Once again, the key is availability of the

administrative remedy. Availability can be likened to adequacy. As a matter of broad

administrative law, if administrative remedy is inadequate, it need not be pursued.

The *Morton* Court supra, opined, at 235, opined:

> Where the rights of individuals are affected, it is incumbent upon agencies to
> follow their own procedures. This is so even where the internal procedures are
> possibly more rigorous than otherwise would be required. Service v. Dulles, 354
> U.S. 363, 388 (1957); Vitarelli v. Seaton, 359 U.S. 535, 539-540 (1959).

As established in the Code of Federal Regulations, IRS refused to even

establish procedures for four years after the right to bring an action was granted by

Congress, and currently imposes a prohibitive provision omitted by Congress.

Administrative remedy, available in form, is unavailable in substance.

As stated by the Supreme Court in *Morton v. Ruiz*, 415 U.S. 199 (1974): The

agency power to make rules that affect substantial individual rights and obligations

carries with it the responsibility not only to remain consistent with the governing

legislation, *FMC v. Seatrain Lines, Inc.*, 411 U.S. 726 (1973); *Dixon v. United States*,

381 U.S. 68, 74 (1965); *Brannan v. Stark*, 342 U.S. 451 (1952), but also to employ

procedures that conform to the law. See *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759,

764 (1969) (plurality opinion). Lack of specific attention to the statutory authorization is

especially important in light of the Supreme Court's pronouncement in *Skidmore v. Swift*

*& Co.*, 323 U.S. 134, 140 (1944), quoted in *Adamo Wrecking Co. v. United States*, 434

U.S. 275, 287 n. 5 (1978), and cited in *SEC v. Sloan*, 436 U.S. 103 (1978), specifying

that factors to be considered in giving weight to an administrative ruling include "the

thoroughness evident in its consideration, the validity of its reasoning, its consistency

with earlier and later pronouncements, and all those factors which give it power to

persuade, if lacking power to control." *SEC v. Sloan*, 436 U.S. 103, 117-118.

The regulation itself is the best evidence of "Lack of specific attention to the statutory authorization" (Skidmore) and failure of "thoroughness...in its consideration" (Sloan). In 301.7433-1's subsection (a), paragraph (1), "reckless or intentional actions" is changed; one must have "...damages sustained as a proximate result of the reckless or <u>international</u> actions..." (emphasis added).

To the extent that Treasury Decision 9050 "re-imposes" the more restrictive language of TBOR I, the regulation exceeds the authority of 7433 in its current form. To the extent that Treasury Decision 9050 re-imposes the prohibition of TBOR I, the regulation fails to remain consistent with the governing legislation; and fails "all those factors which give it power to persuade."

Reviewing courts are not obliged to stand aside and rubber-stamp their affirmance of administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute. Such review is always properly within the judicial province, and courts would abdicate their responsibility if they did not fully review such administrative decisions. *National Labor Relations Board v. Brown*, 380 U.S. 278, 291-292.

## MOTION TO BIFURCATE

Plaintiff therefore moves the Court to "bifurcate"[10] the instant case; to investigate the applicability of a bias exception to the nonjurisdictional exhaustion requirement.

---

[10]As Plaintiff understands this term, the Court would first look into the threshold issues of exhaustion/exception, and, based upon the findings therein, determine whether to move on to the next phase; liability.

Plaintiffs assert that the facts related in Plaintiff's Complaint, verified by Plaintiff's affidavit, establish a factual basis that IRS - an agency not party to the instant action - is biased.

As and for further showing such bias, the Court is requested to take judicial notice of Internal Revenue Service Policy P-5-36, published in the Internal Revenue Manual, at 1.2.1.5.9. The Service Policy states:

"(1)    Returning money wrongfully collected: This Policy Statement has been revoked."

There can be no clearer articulation of the Defendant's agency's general bias: IRS Policy is to refrain from returning amounts unlawfully collected.

Agency bias is further shown by the fact that the defendant's agency ignores many of its other Policies as a matter of course, to wit:

Defendant's agency routinely disregards Service Policy P-5-2(3), which purports a "commitment to observe both the spirit as well as the letter of all legal requirements, including the Taxpayer Bill of Rights I and II and the IRS Restructuring and Reform Act of 1998", yet no IRS publication, publicly available, notifies Citizens of the right to pursue damages under section 7433, let alone any reference to administrative procedures.

Defendant's agency routinely disregards Service Policy P-1-1, Mission of the Service (IRM 1.2.1.2.11):

(1)    Mission of the Service: Provide America's taxpayers top quality service by helping them understand and meet their tax responsibilities and by applying the tax law with integrity and fairness to all.

Defendant's agency has demonstrated bias against me by ignoring my repeated

efforts to gain an understanding of possible responsibilities through examination of IRS

records identifying me; failing to comply with Service Policy P-1-1.

Defendant's agency  routinely disregards Service Policy P-5-2 (IRM 1.2.1.5.2):

(1)    COLLECTING PRINCIPLES: All our decisions about collecting must be guided by these principles. To the extent that they are, we will succeed in our mission.

(2)    SERVICE AND ASSISTANCE-All taxpayers are entitled to courteous, responsive, and effective service and assistance in all their dealings with the Service. We will actively assist taxpayers who try to comply with the law, and work to continually improve the quality of our systems and service to meet the needs of our customes. All taxpayers, whether delinquent or fully compliant, are entitled to prompt and professional service whenever they deal with Service employees.

(3)    TAXPAYER RIGHTS-We will observe taxpayers' rights, including their rights to privacy and to fair and courteous treatment. This affirms our commitment to observe both the spirit as well as the letter of all legal requirements, including the Taxpayer Bill of Rights I and II and the IRS Restructuring and Reform Act of 1998. Taxpayers will be protected from unauthorized disclosure of information.

(4)    COMPLIANCE-The public trust requires us to ensure that all taxpayers promptly file their returns and pay the proper amount of tax, regardless of the amount owed: The public as a whole is our customer, not just delinquent taxpayers. Our customers expect us to promote voluntary compliance by ensuring that all promptly pay their fair share. Employees should work with taxpayers to meet all their filing and paying requirements, not only the delinquency at hand. This involves identifying and addressing non-compliance to prevent future delinquencies. All types of taxpayers (individual and business) who fail to timely file their returns or pay their fair share of taxes must resolve both current and delinquent taxes to be considered compliant.

(5)    CASE RESOLUTION-While we will actively assist taxpayers to comply, we will also take appropriate enforcement actions when warranted to resolve the delinquency. To resolve a case, good judgment is needed to make sound decisions on the appropriate action needed: All taxpayers are required to pay by the due date of the return. From a broad range of collecting tools, employees will select the one(s) most appropriate for each case. Case resolution, including actions such as: lien, levy, seizure of assets, installment agreement, offer in compromise, substitute for return, summons, and IRC 6020(b), are important elements of an effective compliance program. When it is appropriate to take such actions, it should be done promptly, yet judiciously, and based on the facts of each case.

Defendant's agency has demonstrated bias against me by failing to be guided, in

collecting, by the principles listed in Service Policy P-5-2; by failing to assist me in my

attempts to comply with the law; by failing to observe my rights, including my rights to

privacy and to fair and courteous treatment; by failing to work with me to meet any filing

and paying requirements; by failing to determine when and whether it was appropriate

to take actions such as: lien, levy, seizure of assets, installment agreement, offer in

compromise, substitute for return, summons, and IRC 6020(b), based on the facts of

my case; by failing to comply with Service Policy P-5-2.

Defendant's agency routinely disregards Service Policy P-5-16 (IRM 1.2.1.5.3):

(1)    Forbearance when reasonable doubt exists that assessment is correct:
Whenever a taxpayer raises a question or presents information creating
reasonable doubt as to the correctness or validity of an assessment, reasonable
forbearance will be exercised with respect to collection provided (1) adjustment
of the taxpayer's claim is within control of the Service, and (2) the interests of the
Government will not be jeopardized.

Defendant's agency has demonstrated bias against me by failing to exercise

reasonable forbearance, ignoring my repeated efforts to verify any claim of obligation

through examination of IRS assessment records; failing to comply with Service Policy

P-5-16.

Defendant's agency routinely disregards Service Policy P-5-34:

(1)    Collection enforced through seizure and sale of the assets occurs
only after thorough consideration of all factors and of alternative collection
methods: The facts of a case and alternative collection methods must be
thoroughly considered before determining seizure of personal or business assets
is appropriate. Taxpayer rights must be respected. The taxpayer's plan to resolve
past due taxes while staying current with all future taxes will be considered.
Opposing considerations must be carefully weighed, and the official responsible
for making the decision to seize must be satisfied that other efforts have been
made to collect the delinquent taxes without seizing. Alternatives to seizure and
sale action may include an installment agreement, offer in compromise, notice of
levy, or lien foreclosure. Seizure action is usually the last option in the collection
process.

(2)    All seizures will be approved by the Chief, Collection Division, with other specific seizures also requiring District Director, Assistant District Director, or Counsel approval, or court order.

Defendant's agency has demonstrated bias against me by failing to thoroughly

consider the facts of my case(s); by failing to obtain approval of the Chief, Collection

Division for any seizures and by failing to obtain approval for other specific seizures

from District Director, Assistant District Director, or Counsel approval, or court order; by

engaging in enforced collection efforts in the absence of record evidence to support

such actions; failing to comply with Service Policy P-5-34.

Defendant's agency routinely disregards Service Policy P-5-47 (IRM 1.2.1.5.13):

(1)    Notices of lien generally filed only after taxpayer is contacted in person, by telephone or by notice: *** All pertinent facts must be carefully considered as the filing of the notice of lien may adversely affect the taxpayer's ability to pay and thereby hamper or retard the collection process.
(2)    *****.
(3)    Other notice of lien filing requirements: A notice of lien must be filed:
    1.    prior to instituting levy action on property in possession of the taxpayer; and
    2.    prior to service of final demand for payment if there is reasonable probability that suit may later be instituted.

Defendant's agency has demonstrated bias against me by failing to carefully

consider all pertinent facts; by failing to file a Notice of Lien prior to instituting a levy

action; by failing to comply with Service Policy.

Defendant's agency routinely disregards Service Policy P-6-20 (IRM 1.2.1.6.7):

(1)    Information provided taxpayers on the application of the tax law: The Service will develop and conduct effective programs to make available to all taxpayers comprehensive, accurate, and timely information on the requirements of tax law and regulations.
(2)    Positive efforts will be made to determine taxpayers' needs and to effectively meet these needs. Information will be provided through a variety of means, including telephone and office assistance programs, mass media and

taxpayer publications.

Defendant's agency has demonstrated bias against me by failing to provide me

with information on the application of the tax law, refusing my requests for

comprehensive, accurate, and timely information on the requirements of tax law and

regulations; by failing to make positive efforts to determine my needs and to effectively

meet those needs; failing to comply with Service Policy.

Defendant's agency routinely disregards Service Policy P-6-21 (IRM 1.2.1.6.8):

(1)    Educational programs provided: The Service will conduct taxpayer
education programs for taxpayers whose needs for tax information are most
effectively met by these means.
(2)    These educational programs will include those established to assist
individuals in meeting their current and future tax obligations, as well as
programs designed to instruct groups of taxpayers or prospective taxpayers on
their rights and responsibilities under the tax law or on specific tax provisions of
common interest.

Defendant's agency has demonstrated bias against me by failing to conduct

education programs; by failing to instruct me on rights and responsibilities under the tax

law or on specific tax provisions; by failing to comply with Service Policy.

Defendant's agency routinely disregards Service Policy P-10-42 (IRM

1.2.1.10.4):

(1)    All bona fide complaints or allegations will be investigated: An
investigation will be made of all bona fide complaints or allegations of
misconduct or irregularities concerning Service officials or employees and in
certain instances investigations may be made of non-Service personnel when
their actions may affect the integrity of the Service.

Defendant's agency has demonstrated bias against me by refusing to

investigate my complaints or allegations of misconduct or irregularities; by failing to

comply with Service Policy.

The Court will note that <u>McCarthy</u> found that:

> Even where the administrative decisionmaking schedule is otherwise reasonable and definite, a particular plaintiff may suffer irreparable harm if unable to secure immediate judicial consideration of his claim. Bowen v. City of New York, 476 U.S. at 483; Aircraft & Diesel Equipment Corp. v. Hirsch, 331 U.S. 752, 773 (1947)

<u>McCarthy</u>, at 147

As part of the "bias phase" the Court should determine whether I "may suffer irreparable harm if unable to secure immediate judicial consideration" of my claim.

Defendant's agency has demonstrated general bias by failing to prescribe the administrative procedure necessary to give effect to section 7433, as originally added, for over three years after Congress enacted TBOR I. Treasury Decision 8392, 57 FR 3536, necessary from and after November 10, 1988, was not promulgated until January 30, 1992, and might not have been effective until February 18, 1992.

Defendant's agency has demonstrated general bias by failing to amend the regulation to reflect Congress' intent in TBOR II, at all.

Defendant's agency has demonstrated general bias by failing to promulgate the current regulation for more than four years and nine months after Congress' re-amendment in TBOR III. As amended by T.D. 9050, 68 FR 14320, the current 301.7433-1 was not promulgated until March 25, 2003.

Defendant's agency has demonstrated bias by attempting to impose a jurisdictional prerequisite omitted by Congress.

Defendant's agency's bias is best illustrated in March v. Internal Revenue Service -- 335 F.3d 1186 (2003):

> "[T]he IRS concedes that "when the Debtors argue that the 23C Forms were never produced, it is because they probably do not physically exist." Aple.

Br. at 15 n.2. In other words, the IRS gets the benefit of a presumption that they admit is likely false."

As part of the "bias phase" the Court should consider this factual admission against interest in determining whether my "interests in immediate judicial review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further"; McCarthy, p. 146, citing West v. Bergland, 611 F.2d 710, 715 (CA8 1979), cert. denied, 449 U.S. 821 (1980).   The Court should consider this factual admission against interest in determining whether defendant's reliance upon "the benefit of a presumption that [IRS] admit is likely false" should override those interests.

***

Turner also cited as a district precedent Koerner (dual cases), which was held to have set forth sufficient facts to survive a failure to state a claim motion. It appears to Plaintiff that this "indistinguishable" case should be precedent with respect to adequacy of the Complaint, resulting in a similar finding.

Finally, the Court is requested to take judicial notice of published reports and testimony of the Treasury Inspector General for Tax Administration, showing that, from 2000 through 2005, defendant's agency made no monetary settlements to any claimant.

Respectfully,

_____
Eli Mast


On the above inscribed date before the undersigned, a Notary Public for the

State of Missouri, personally appeared Eli Mast, known to me to be the person whose

name is subscribed to the within instrument, and acknowledged to me that he executed

the same as his free act and deed.

Notary, State of Missouri

```
* NOTARY  SEAL *
Lilly L. Norris, Notary Public
Webster County, State of Missouri
My Commission Expires 8/13/2010
Commission Number 06428459
```